# WILLIAM F. WALTERS
## v.
# ANNA WALTERS.

*Fraudulent Conveyances—Collusion—Creditor's Bill—Claim for Personal Services—Judgment by Default—Secret Trust.*

1. Upon a creditor's bill to set aside a conveyance made without consideration, as fraudulent, clear proof to impeach the judgment on which the proceeding is based for fraud, is required. Mere suspicion because of the amount of the judgment is insufficient.

2. In the case presented, it being sought to subject the lands conveyed to a judgment obtained three years thereafter, chiefly for personal services covering many years, the conveyance in question having been made without consideration to defeat a claim that was apprehended but never asserted, and in secret trust for the benefit of the grantor, this court declines to interfere with the decree for the complainant, the evidence being insufficient to show collusion, or that the judgment is excessive.

[Opinion filed May 25, 1888.]

IN ERROR to the Circuit Court of Sangamon County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. JOHN M. and JOHN MAYO PALMER, for plaintiff in error.

The conveyance made by Pollard Keen Walters to the defendant below is valid as between the parties, whether supported by a consideration or not. The complainant below attacks it in her alleged character of creditor. In order to her success, it must appear from the evidence that she is a creditor of the grantor under whom the defendant claims, and was so at the time of the execution of the deed.

A fraudulent deed is conclusive as to the grantor and his heirs. Horner v. Zimmerman, 45 Ill. 14; Lyon v. Robbins, 46 Ill. 276.

To impeach a voluntary conveyance successfully, it lies upon the complainant to aver and prove that he was a creditor at the time the conveyance was made. Moritz v. Hoffman, 35 Ill. 553; Merrell v. Johnson, 96 Ill. 231.

We have said that the complainant below attacks the deed in her alleged character as creditor; but it will be seen, upon examination, that the bill contains no averment of the date of the account, or of the nature or amount of her alleged demands against Pollard K. Walters. The only averment of the bill which refers to the existence of the claim is, "that on the 16th day of May, 1882, after the greater amount of the indebtedness upon which the judgment was rendered had accrued, the said Pollard K. Walters made a pretended conveyance," etc.

The averment quoted, whatever other meaning it may have, contains a distinct admission that some part of the indebtedness for which the judgment was rendered, accrued after the date of the conveyance under which defendant claims.

Referring to the rule which makes it necessary, in order to impeach a voluntary conveyance, to aver and prove that the complainant was a creditor at the time the conveyance was made, it seems to us that the averments of this bill are not only insufficient, but the one found in the bill makes it absolutely impossible that the decree of the court below should be sustained. If the bill precisely averred an amount to be due at the date of the defendant's deed, the deed could only be held void as to the amount due.

A deed, even if made to defraud, hinder or delay creditors, is, in the contemplation of the statute, void as to creditors who were such at the time of the execution of the deed, but not as to subsequent creditors. Ward v. Enders, 29 Ill. 519. And the authorities are numerous in support of the rule, that a creditor who blends in one suit debts accruing before and after a conveyance alleged to be fraudulent, and who recovers a judgment for the whole demand, will be regarded as a subsequent creditor. Usher v. Hazeltine, 5 Me. 471; 17 Am. Dec. 254; Miller v. Miller, 23 Me. 22; 39 Am. Dec. 597 and note; Reed v. Woodman, 4 Me. 100; Moritz v. Hoffman, 35 Ill. 553.

Messrs. PATTON & HAMILTON, for defendant in error.

"In cases where fraud is established, the creditor does not claim through the debtor, but adversely to him, and by a para-

mount title which overreaches and annuls the fraudulent con-
veyance or judgment by which the debtor himself would be
estopped." Waite's Fraudulent Conveyances, Sec. 74.

When the conveyance is to hinder and defraud creditors, it
is void as against existing and subsequent creditors. Getzler
v. Saroni, 18 Ill. 511; Morrill v. Kilner, 113 Ill. 318.

When a conveyance is merely colorable and a secret trust
and confidence exist for the benefit of the grantor, it is void
as against both pre-existing and subsequent creditors. Jones
v. King, 86 Ill. 225; Annis v. Bonar, 86 Ill. 128; Moore v.
Woods, 100 Ill. 451; Gordon v. Reynolds, 114 Ill. 118; Law-
son v. Funk, 108 Ill. 502; Bump's Fraudulent Conveyances,
Sec. 319; Mitchell v. Sawyer, 115 Ill. 650.

The grantee of a voluntary or fraudulent conveyance may
show the judgment was fraudulently obtained, or that the debt
has been paid, but the right to impeach the judgment does
not extend so far as to give him the right to re-try an issue
which has been litigated and determined between the parties
in accordance with the forms and principles of law. Bump's
Fraudulent Conveyances. 540; Sidensparker v. Sidensparker,
52 Me. 481; Ferguson v. Kummler, 11 Minn. 104.

He can not defend on the ground that the debtor might
have interposed a good defense against the judgment had he
chosen to assert it. Dewey v. Moyer, 9 Hun, 479.

"A court of equity can not and ought not to take upon
itself to enter anew into the merits of the case. It is bound
to presume that all things have been rightfully done."
Story's Eq. Pl., Sec. 782.

PLEASANTS, J. This was a creditor's bill filed by Anna
Walters July 18, 1885, to set aside a deed of May 10, 1882,
from Pollard K. Walters to his brother, the plaintiff in error,
and subject the lands therein described to her judgment
against the grantor, of June 18, 1885, for $10,000.

Pollard was defaulted, and on the pleadings and proofs as
to William F., a decree was entered setting aside said deed.
Though prior to her judgment, she charged that it was
executed "after the greater part of the indebtedness on which

it was rendered had accrued," which is deemed a sufficient averment that she was at the time a creditor of the grantor. The bill went further, however, and charged that it was "not real, but a sham, made with the intention of defrauding" complainant and his other creditors; and in Jones v. King, 86 Ill. 229, the court said: "We understand the rule to be settled that where the conveyance is colorable merely, and a secret trust and confidence exists for the benefit of the grantor, the conveyance will be held void both as against precedent and subsequent creditors." In Gordon v. Reynolds, 114 Ill. 127, also expressly distinguishing such a conveyance from those held to be fraudulent only against existing creditors, the language above quoted is repeated and approved. The descriptions in the bill and in the opinion cited are substantially equivalent.

It sufficiently appears that this deed was made without valuable consideration, to defeat claims that were apprehended but never asserted, and in secret trust for the benefit of the grantor, and that he had not then and has not now any other property subject to execution.

But it is said Mrs. Walters can not complain, because her judgment is no less tainted; that it was obtained upon a purely fictitious claim, by collusion and for a fraudulent purpose; and furthermore that the deed was made upon her advice or with her consent.

It was a judgment by default, and the damages were assessed by the court upon the testimony of five or six witnesses, who testified in this case also, and to the following effect:

Twenty-one or two years before, she came, a stranger, from Missouri, to the house of Pollard K. Walters, a bachelor, with whom were living his mother, an invalid sister and a younger brother, and entered upon what has been the work of her life ever since, (save the time of a few visits to her daughter in Nebraska, the longest of which was five or six months,) and which is supposed to be the foundation and principal part of her claim.

It consisted of both management and manual labor, in every department within the house, and not a little without. Ex-

cepting the first few years, she was almost entirely unassisted. Pollard, having lost a leg, growing old and in impaired health, could do but little; his mother, who died about 1871 at an advanced age, was long disabled; the sister, still living on the place with him and the defendant in error, was a fleshy, heavy woman, hard of hearing, almost totally blind, and without the use of her lower limbs. The farm comprised about two hundred and thirty acres, of which nearly one hundred and sixty were under cultivation. With these conditions the cares and labors of this unaided woman may be more easily imagined than described. Her duties as nurse alone, were such as few would undertake, except from necessity or natural affection. Many witnesses testified to her performance of them, some of whom were adverse in interest and unfriendly in feeling, yet not one made a question as to her faithfulness, efficiency or kindness. She served, besides, as housekeeper, manager, and woman of all work, including much that was properly a man's only, and her ability in all these lines appears to have been remarkable. For all this service she had received but little, if anything, more than her living. The small sums of money she got from time to time may well have been for her use as manager, and expended for the family. Pollard says he had paid her nothing on account of her services. There was no express contract nor ever any settlement between them. But these facts are explained, in part at least, by their evident illiteracy and the expectation that she would be paid out of the land. Coming to him a stranger, as she did, she sustained no such relation as would warrant the presumption that her services were rendered gratuitously or as a member of the family. She did not become a member until about five years ago, when she was married to David, the younger brother referred to, a few weeks before his death.

She had, then, an honest claim, on which she might have had a righteous judgment and been well entitled to protection against this fraudulent conveyance.

But for how much? It appears to have been ascertained by a judgment regularly obtained. Did she and those who were authorized to represent her, present it in good faith as to the amount?

If it was wholly or mainly for wages, it must be conceded that the sum recovered, $10,000, was extraordinarily large, even for twenty years of service, all unpaid; and if it depended upon the evidence produced in this case, exclusive of the judgment, it would be difficult, in the light of our common knowledge, to sustain it. What we all know of wages paid to hired women, even for services of the character here indicated, would discredit to some extent, in respect to their honesty or their intelligence, any opinions of the reasonable market value of hers that would make up that sum. The only direct evidence of their value came from the side of the plaintiff in error. Two or three of his witnesses estimated it at from one to two dollars per week. They were not entirely disinterested and unprejudiced, and from all the evidence and our common knowledge, we should think this unreasonably low.

On the part of the defendant in error it was testified, somewhat incidentally, that seven or eight years ago she loaned to Pollard Walters about $700, which she had received from David before their marriage, and Pollard himself said, generally, that he had borrowed money from her at different times, and that he justly owed her more than the amount of the judgment. But she did not attempt to re-try her claim or show the justice of the finding. She relied on the judgment itself, as sufficient of its own force. The record introduced showed a summons, proper and timely service thereof, default taken, assessment by the court on hearing evidence and final judgment for the amount assessed—all in the usual form; but not the declaration, nor the account filed with it, if any there was.

This was conclusive against Pollard and *prima facie* sufficient as against the plaintiff in error to establish the existence and amount of her debt. Nor would the mere fact, if shown, that it was erroneous as to the amount or otherwise unjust to Pollard, avail the plaintiff in error, for the reason that such fact, of itself alone, would not affect the presumption of good faith on the part of defendant in error in obtaining it. Through errors of counsel, courts and juries, such judgments are constantly being obtained. He is not authorized to re-try

Walters v. Walters.

the claim or investigate the judgment for the purpose of cor-
recting error and injustice against Pollard. He presented no
such issue, nor could he have well presented it, by his plead-
ing. He has no equity in the land. He paid nothing for it.
His deed, though valid as against Pollard, is void even as to
his subsequent creditors. Against such he can not contend.
He is permitted to contend against this apparent creditor
because he alleges that she is not a real creditor; that the judg-
ment which gives her the appearance of a real creditor was
collusive and fraudulent, and so no judgment at all. He must
therefore show it was so erroneous, so unjust, or so obtained
as to overcome the presumption of good faith in obtaining it.

The question, then, is whether there is evidence in the case
of an amount and character sufficient to overcome such pre-
sumption arising from the judgment itself and the circum-
stances of its rendition, and it is a question not free from diffi-
culty. This arises almost entirely from the magnitude of the
amount. If it had been two or three thousand dollars, we
should have little or no hesitation about it; but we can not
entirely rid our minds of suspicion that some fictitious claim,
some guess by witnesses as to the amount, or some fraudulent
or careless admission by the defendant therein, was used to
arrive at the large amount found. And yet it is hardly more
than suspicion and based as much on ignorance and assump-
tion as on knowledge of real facts. What is known is, that
though a judgment by default, it was not by confession; that
the assessment was made not upon mere computation, nor
upon the testimony of either party, but of a number of wit-
nesses who seem to have had no interest in the question, and
that the amount assessed was precisely that laid in the *ad
damnum* in the writ.

What is unknown is, what were the items of plaintiff's
claim and what was the testimony of the witnesses on the
assessment. It was for the plaintiff in error to make these
appear if they would tend to show fraud. Can he insist, on
any rule of law or reason or logic, that the amount of the
judgment shall be considered as a circumstance bearing on the
question of its fairness, in the absence of all proof as to the

evidence on which it was obtained? Can he ask this court to hold, abstractly, that Mrs. Walters could not have a just claim to that amount against Pollard K. Walters? Can it be assumed or inferred from anything in this record that her claim was limited to wages for her services and $700 of money loaned? Can the opinion of witnesses in this case as to the value of her services impeach the credibility of testimony that is unknown? Can we assume that this testimony included an admission by Pollard as to the amount he owed, and further, that such admission was fraudulently made to be proved, in lieu of other evidence which could not be produced of the reality and amount of her claim? And what effect shall be given to the presumption of intelligence and integrity to which the judge who heard the evidence and rendered the judgment is entitled?

On the hearing of this cause the complainant swore that she brought that suit in good faith to secure what Pollard Walters owed her, and he, that he made no defense because he had none, and that he justly owed her all she recovered. Neither was cross-examined. There is no other creditor of Pollard to be affected by this judgment; and we think, notwithstanding suspicion, that clearer proof to impeach it for fraud should be required of the plaintiff in error, than he has here produced.

It is not shown by a preponderance of evidence that the deed to him was made upon the advice or with the consent or knowledge of Mrs. Walters.

The decree of the Circuit Court will be affirmed.

*Decree affirmed.*